**A & M FIX–IT, INC., dba A & M Mower & Cyclery, Plaintiff,**

v.

**SCHWINN BICYCLE COMPANY, a Foreign Corporation, and Schwinn Sales Midwest, Inc., a Foreign Corporation, Defendants.**

Civ. No. NC–79–0094.

United States District Court,
D. Utah, N. D.

July 11, 1980.

Jonathan A. Dibble, Ray, Quinney & Nebeker, Salt Lake City, Utah, Richard L. Reinish, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

Erik M. Ward and Philip C. Patterson, Patterson, Gridley & Echard, Ogden, Utah, for defendants.

## ORDER AND MEMORANDUM DECISION

WINDER, District Judge.

Plaintiff A & M sold defendants' bicycles and accessories under a "Schwinn Dealer Franchise Agreement" for twenty-four of the thirty-two years it has been in business in Ogden, Utah. From 1954 until 1978, the "Schwinn Dealer Franchise Agreement" was automatically renewed each year pursuant to a letter from Schwinn's representative, W. P. Oberlin, dated October 20, 1954. Both parties rely on that letter to support their positions. In pertinent part, the letter states:

> Paragraph 3(a) of your Schwinn Dealer Franchise Agreement is hereby amended and supplemented so that upon the expiration of the extension hereby given and at the end of each year thereafter, the agreement will be automatically renewed for a period of one year unless terminated by you by notice to Arnold, Schwinn & Co. prior to any such anniversary date, or by Arnold, Schwinn & Co. in accordance

with the terms of the franchise agreement. All other terms, conditions and provisions of said agreement, including the right of Arnold, Schwinn & Co. to terminate the same at any time, shall be and remain in full force and effect during the term of said agreement and any extension thereof.

Paragraph 3(a) of the "Schwinn Dealer Franchise Agreement" signed in 1954 referred to in Oberlin's letter provides:

> 3. Dealer and Schwinn mutually agree:
>
> (a) This franchise shall remain in effect until the expiration date shown above, provided that this franchise or any provision thereof may be forthwith cancelled by Schwinn at any time by written notice mailed to dealer at the above address.

In 1962, A & M moved its business a block away from its 1954 location without obtaining prior· written approval from Schwinn. Four years later, in 1966, a new "Schwinn Dealer Franchise Agreement" was executed by the parties containing the following language:

> 3. Dealer and Schwinn mutually agree:
>
> (a) This franchise shall remain in effect until the original expiration date shown above, and shall automatically be renewed from year to year thereafter, unless terminated by notice to Schwinn by Dealer prior to any anniversary date, provided that this franchise or any provision thereof may be forthwith cancelled by Schwinn at any time by written notice mailed to Dealer at the above address.

Both parties agree that it is this 1966 contract which governs their claims here.

In 1976, Dan and Rita James, controlling shareholders of A & M, purchased property approximately fifteen blocks from the location of the 1962 shop and began planning for construction of a new shop to house their bicycle and lawnmower, snowblower, etc., business. A & M claims that representatives of Schwinn were verbally notified of its intentions to move to the new facility and made suggestions concerning the plans.

In January, 1978, Schwinn mailed to its dealers a "Notice of Termination" and a

new "Schwinn Agreement" which omitted all reference to the term "franchise" and contained an express provision requiring prior written approval from Schwinn for a dealer to change business locations. This new agreement was completed by A & M, listing as its location its new address. Schwinn thereafter completed a market study on the new location after which its regional sales manager recommended that A & M's dealership not be renewed. Schwinn's Manager of Dealer Relations informed A & M of the termination of its dealership by letter dated March 17, 1978. On April 20, 1978, A & M attempted to order 200 Schwinn bicycles which it represented would be sold from its former location, but the order was refused. Schwinn did, however, allow A & M to sell its remaining inventory of Schwinn bicycles. On June 12, 1979, this action was commenced.

The amended complaint, filed January 21, 1980, claims two causes of action: wrongful termination of A & M's franchise for the reason that Schwinn's conduct was in bad faith and without good cause, and reliance to A & M's detriment upon Schwinn's conduct leading A & M to construct a new building.

Schwinn seeks summary judgment dismissing the amended complaint asserting that the language of the agreement between the parties prescribes the manner of termination, with which Schwinn complied, and prescribes that A & M could only sell bicycles from the location listed as its address, that neither the common law of Illinois nor Utah requires a bicycle manufacturer to demonstrate good cause prior to terminating a dealer, but that if required, Schwinn did have good cause because A & M moved without approval, and that A & M can show no damages because it does not own the building housing its shop.

As rebuttal, A & M claims that the relationship between it and Schwinn was a franchise and could not be terminated absent good cause, which Schwinn did not have, and that the doctrine of promissory estoppel applies in its favor in this case.

The court has read the memoranda and authorities submitted by both parties and, accepting all the allegations and facts in the light most favorable to A & M, the nonmoving party, determines that Schwinn did have the right to terminate the agreement. The clear language of the 1966 agreement, quoted earlier, provides for cancellation "at any time by written notice to Dealer at the above address . . ." and also purports to appoint A & M "as its [Schwinn's] authorized dealer for Schwinn Products at the address shown above." Dealer may terminate, under the agreement, "by notice to Schwinn . . . prior to any anniversary date" on which the agreement was automatically renewed. Dan James, owner of A & M, testified in his deposition that it was his understanding that A & M could have terminated its relationship with Schwinn at any time, but at oral argument on the motion it was A & M's position that Schwinn could effect termination only for specific breach of the 1966 agreement. Nowhere by its terms does the agreement require good cause or specific breach for termination by either party. A & M does not contest that Schwinn notified it by letter of its termination on December 31, 1977.[1] It was when Schwinn refused to accept A & M's 1978 application, which A & M submitted from its new address, that A & M complained. On March 17, 1978, A & M's 1978 application was formally denied in a letter entitled "Refusal of New Location," and on May 8, 1978, in response to A & M's order of April 28, Schwinn wrote, "In view of the fact that your Schwinn Dealership at 2437 Grant Avenue has been terminated, we will be unable to ship this order."

Besides asserting that it had the right to terminate at will, Schwinn also contends that it had good cause for terminating the agreement because A & M's relocation without prior approval constituted breach of the agreement to sell at the old address. A & M's position is that good cause for termination is required, and was absent here, because a franchise relationship existed between the parties, and that whether or

1. By letter of that date, Schwinn terminated all dealerships and subsequently required those with whom it renewed its dealings to execute the 1978 agreement.

not such a relationship existed and whether the change of address constituted breach raise fact issues which preclude the granting of summary judgment.

■ Neither the common law of Illinois nor Utah specifies a requirement of good cause for termination of a dealership agreement, although that requirement has been read into the law of Utah for termination of a franchise. *Seegmiller v. Western Men, Inc.*, 20 Utah 2d 352, 437 P.2d 892 (1968). The court does not reach the issue of whether the change of address is a material breach because it holds as a matter of law that no franchise agreement existed between the parties and that either party could have terminated the arrangement that existed with or without cause upon proper notice.

■ A & M claims a franchise relationship existed between the parties because Schwinn entitled its agreement "Schwinn Dealer Franchise Agreement," A & M was required to pay for the schooling of its bicycle mechanics received from Schwinn, and A & M was required to repair bicycles with Schwinn parts, display and advertise Schwinn bicycles, and maintain a register of Schwinn buyers. Whatever support these indicia might give to A & M's claim that such a relationship existed, too many other indicia characteristic of a true franchise relationship are missing here for any fact issue to be raised on that subject. For example, A & M was not prohibited from selling other types of bicycles or other machines, and, in fact, bicycle sales were only approximately twenty per cent of A & M's total sales. Neither A & M, nor other Schwinn dealers, paid for the right to sell Schwinn bicycles. Schwinn was not entitled to receive any percentage or fee from the sale of bicycles or to inspect or exercise control over A & M's operations, books and promotional business practices. Schwinn did not prescribe a marketing place or system. *Compare, Craig Food Industries, Inc. v. Taco Time International*, 469 F.Supp. 516 (C.D.Utah 1979). Regardless of what the relationship between the parties might be labeled, it is the opinion of the court that it is clearly not a franchise. In the absence of a franchise relationship, the terms of the agreement between the parties control their rights to terminate, and this court will not impose more stringent terms upon the parties than those for which they contracted.

■ A & M's second cause of action asserts that Restatement of Contracts, § 90 prohibited Schwinn's termination under the theory of promissory estoppel. Section 90 states:

A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

The most basic requirement of § 90 is a promise. The best A & M can allege is that Schwinn's representatives Miller and Staub were aware A & M was contemplating a move wherein it would expend large amounts of money, that Miller saw the plans and expressed an opinion that they looked good, that Staub visited the building site once, and that Schwinn

at no time advised the plaintiff verbally or in writing that the design and construction of the new building were inadequate for or could not be approved for the plaintiff's continued sale and distribution of bicycles and bicycle components pursuant to its franchise agreement with the defendants, and each of them.

A & M acknowledges that there was no express promise made by Schwinn, and it is the opinion of the court that even accepting the plaintiff's claims fully on this point that no reasonable factfinder could conclude that the conduct of the defendants' agents constituted a "promise" within the meaning of this section of the Restatement.

■ Further, even if a promise were found to be implied, the record is totally absent of any evidence of reasonable reliance; there is no evidence that A & M would not have moved but for the representations of Schwinn.

Based upon the foregoing,

IT IS HEREBY ORDERED that defendants' motion for summary judgment on both counts of the Amended Complaint is granted.